Daniel Srourian, Esq. [SBN 285678]
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr. Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Fax: (213) 471-4160
Email: daniel@slfla.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

DONNA ORLANDO, individually, and on behalf of all others similarly situated,

Plaintiffs,

vs.

KEESAL, YOUNG & LOGAN,

Defendant.

Case No.: _____

**CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL**

Plaintiff Donna Orlando ("Plaintiff") brings this Class Action Complaint on behalf of herself, and all others similarly situated, against Defendant Keesal, Young & Logan ("KYL" or "Defendant"), alleging as follows, based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to him, which is based on personal knowledge:

1.     Entities that gather and retain sensitive, personally identifying information ("PII" or "Private Information") owe a duty to the individuals to whom that data relates. This duty arises because it is foreseeable that the exposure of consumers' PII to unauthorized persons—especially hackers with nefarious intentions—will cause harm to such individuals.

2.      Defendant is a law firm based in California that provides business and civil litigation services to clients throughout the Western U.S. and Pacific Rim.[1]

3.      Defendant declares in its "Privacy Policy" that:

> "We have in place technical and organizational security measures to protect the personal information we collect and maintain about you from unauthorized, improper or unlawful access, use, disclosure, alteration or destruction."[2]

4.      Contrary to its assurances, Defendant did not maintain adequate measures to ensure the security of the highly sensitive PII consumers entrusted to it. As more specifically described below, this Complaint concerns a recent data breach (the "Data Breach") on KYL's network that resulted in unauthorized access to the highly sensitive data of roughly 316,350 individuals.[3]

5.      It is unknown for how long the cybercriminals had access to Defendant's network before the breach was discovered. Defendant obtained the PII of Plaintiff and Class Members and stored that PII, unencrypted, in an Internet-accessible environment on Defendant KYL's network, from which unauthorized actors retrieved sensitive PII belonging to Plaintiff and Class Members.

6.      In the mailed notice, Defendant claimed that it learned of the Data Breach on June 13, 2024, yet waited four months before sending statutory data breach notices.

7.      The harm resulting from a breach of private data manifests in a number of ways, including identity theft and financial fraud. The exposure of a person's PII through a data breach ensures that such person will be at a substantially increased

---

[1] https://www.kyl.com/about/ (last visited Dec. 10, 2024)
[2] https://www.kyl.com/privacy-policy/ (last visited Dec. 10, 2024)
[3] Breach Notification Cover Sheet, Office of the Maine Attorney General, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/a6593841-6e09-4ab4-aeec-43e5b0e52324.html (last visited Dec. 10, 2024)

and certainly impending risk of identity theft crimes compared to the rest of the population, potentially for the rest of their lives. Mitigating that risk—to the extent it is even possible to do so—requires individuals to devote significant time and money to closely monitor their credit, financial accounts, health records, and email accounts, as well as other prophylactic measures.

8.      Defendant breached its duty to protect the sensitive PII entrusted to it, failed to abide by its own Privacy Policy, and failed to provide sufficiently prompt notice after learning of the Data Breach. As such, Plaintiff brings this Class action on behalf of themselves and over 316,000 other consumers whose PII was accessed and exposed to unauthorized third parties.

9.      As a direct and proximate result of Defendant's inadequate data security, and breach of its duty to handle PII with reasonable care, Plaintiff's and the Class' PII has been accessed by hackers, potentially posted on the dark web, and exposed to an untold number of unauthorized individuals.

10.      Plaintiff is now at a significantly increased and certainly impending risk of fraud, identity theft, and similar forms of criminal mischief, risk which may last for the rest of her life. Consequently, Plaintiff must devote substantially more time, money, and energy to protect herself, to the extent possible, from these crimes.

11.      Plaintiff, on behalf of herself and others similarly situated, brings claims for negligence, negligence *per se*, breach of fiduciary duty, breach of confidences, breach of an implied contract, unjust enrichment, and declaratory judgment, seeking actual and putative damages, with attorneys' fees, costs, and expenses, and appropriate injunctive and declaratory relief.

12.      To recover from Defendant for her sustained, ongoing, and future harms, Plaintiff seeks damages in an amount to be determined at trial, declaratory judgment, and injunctive relief requiring Defendant to: (1) disclose, expeditiously,

the full nature of the Data Breach and the types of PII accessed, obtained, or exposed by the hackers; (2) implement improved data security practices to reasonably guard against future breaches of PII possessed by Defendant; and (3) provide, at its own expense, all impacted victims with lifetime identity theft protection services.

## PARTIES

13.    Plaintiff Donna Orlando is a resident and citizen of Lancaster, New York where she intends to remain.

14.    Orlando's PII was stored and handled by Defendant on its systems.

15.    As a result of Defendant's conduct, Plaintiff suffered actual damages including, without limitation, time related to monitoring their financial accounts for fraudulent activity, facing an increased and imminent risk of fraud and identity theft, the lost value of their personal information, and other economic and non-economic harm. Plaintiff and Class members will now be forced to expend additional time, efforts, and potentially expenses to review their credit reports, monitor their financial accounts, and monitor for fraud or identify theft.

16.    Defendant Keesal, Young & Logan ("KYL"), is a professional corporation formed under the laws of California with its principal place of business located at 310 Golden Shore, Suite 400 Long Beach, California 90802.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d). The amount in controversy in this Class action exceeds $5,000,000, exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendant's states of citizenship.

18.    This Court has personal jurisdiction over Defendant in this case because Defendant is headquartered and has its principal place of business in this District. Defendant conducts substantial business and has minimum contacts with the State

of California.

19.    Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant and/or its parents or affiliates are headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

*Defendant and the Services it Provides.*

20.    Defendant KYL is a law firm based in California that provides business and civil litigation services to clients throughout the Western U.S. and Pacific Rim.[4]

21.    On information and belief, KYL maintains the PII of customers, including but not limited to:

    a.    name, Social Security number, financial account information, driver's license number, passport number, government identification number, date of birth, medical information, health insurance information, taxpayer identification number, biometric information, and username/password.[5]

22.    Plaintiff and Class Members directly or indirectly entrusted Defendant with sensitive and confidential PII, which includes information that is static, does not change, and can be used to commit myriad financial and other crimes.

23.    By obtaining, collecting, and storing Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that Defendant was responsible for protecting Plaintiff's' PII from unauthorized disclosure.

_____

[4] https://www.kyl.com/about/ (last visited Dec. 10, 2024)
[5] https://www.kyl.com/notice-of-data-event/ (last visited Dec. 10, 2024)

24.     Plaintiff and the Class Members relied on Defendant to implement and follow adequate data security policies and protocols, to keep their PII confidential and securely maintained, to use such PII solely for business purposes, and to prevent the unauthorized disclosures of the PII.

25.     If Plaintiff and Class Members had known that Defendant would not take reasonable and appropriate steps to protect their sensitive and valuable PII, they would not have entrusted it to Defendant.

***Defendant Knew the Risks of Storing Valuable PII and the Foreseeable Harm to its Consumers.***

26.     At all relevant times, Defendant knew it was storing sensitive PII and that, as a result, its systems would be an attractive target for cybercriminals.

27.     Defendant also knew that a breach of its systems, and exposure of the information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose PII was compromised.

28.     These risks are not theoretical. The financial industry has become a prime target for threat actors.

29.     Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack.

30.     In tandem with the increase in data breaches, the rate of identity theft complaints has also increased over the past few years. For instance, in 2017, 2.9 million people reported some form of identity fraud compared to 5.7 million people in 2021.[6]

_____

[6] *Insurance Information Institute, Facts + Statistics: Identity theft and cybercrime,* Insurance Information Institute, https://www.iii.org/fact-statistic/facts-statistics-identity-

31.    The type and breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Defendant's consumers especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud, and more.

32.    PII is a valuable property right.[7] The value of PII as a commodity is measurable. [8] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[9] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[10] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

33.    As a result of their real value and the recent large-scale data breaches, identity thieves and cyber criminals have openly posted credit card numbers, Social Security numbers, PII, and other sensitive information directly on various Internet websites, making the information publicly available. This information from various

---

theft-and-cybercrime#Identity%20Theft%20And%20Fraud%20Reports,%202015-2019%20 (last visited Apr. 17, 2023).

[7] *See* Marc Van Lieshout, *The Value of Personal Data*, 457 IFIP ADVANCES IN INFORMATION & COMMUNICATION TECHNOLOGY 26 (May 2015), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible …").

[8] Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (Apr. 28, 2014), http://www.medscape.com/viewarticle./824192.

[9] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD 4 (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[10] *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERTISING BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

breaches, including the information exposed in the Data Breach, can be aggregated, and becomes more valuable to thieves and more damaging to victims.

34.    According to the U.S. Government Accountability Office, which conducted a study regarding data breaches: "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[11]

35.    Even if stolen PII does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear phishing. In these forms of attack, the criminal uses the previously obtained PII about the individual, such as name, address, email address, and affiliations, to gain trust and increase the likelihood that a victim will be deceived into providing the criminal with additional information.

36.    Consumers place a high value on the privacy of that data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[12]

---

[11] United States Government Accountability Office, Report to Congressional Requesters, Personal Information, June 2007: https://www.gao.gov/new.items/d07737.pdf (last visited Apr. 17, 2023).

[12] Janice Y. Tsai *et al.*, *The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study*, 22(2) Information Systems Research 254 (June 2011), https://www.guanotronic.com/~serge/papers/weis07.pdf.

37.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

38.     Based on the value of its consumers' PII to cybercriminals and the growing rate of data breaches, Defendant certainly knew the foreseeable risk of failing to implement adequate cybersecurity measures.

***Defendant Breached its Duty to Protect its Consumers' PII.***

39.     Keesal, Young & Logan filed a Data Breach Notification with the Office of the Maine Attorney General.[13]

40.     It is likely the Data Breach was targeted at Defendant due to its status as a company that collects, creates, and maintains sensitive PII.

41.     Upon information and belief, the cyberattack was expressly designed to gain access to private and confidential data of specific individuals, including (among other things) the PII of Plaintiff and the Class Members.

42.     Upon information and belief, and based on the type of cyberattack, it is plausible and likely that Plaintiff's PII was stolen in the Data Breach. Plaintiff further believes her PII was likely subsequently sold on the dark web following the Data Breach, as that is the modus operandi of cybercriminals.

43.     Defendant had a duty to adopt appropriate measures to protect Plaintiff's and Class Members' PII from involuntary disclosure to third parties.

---

[13] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/a6593841-6e09-4ab4-aeec-43e5b0e52324.html (last visited Dec. 10, 2024)

44.    Because of the Data Breach, data thieves were able to gain access to Defendant's private systems on June 13, 2024, and were able to compromise, access, and acquire the protected PII of Plaintiff and Class Members.

45.    KYL had obligations created by contract, industry standards, common law, and its own promises and representations made to Plaintiff and Class Members to keep their PII confidential and to protect them from unauthorized access and disclosure.

46.    Plaintiff and the Class Members reasonably relied (directly or indirectly) on Defendants' sophistication to keep their sensitive PII confidential; to maintain proper system security; to use this information for business purposes only; and to make only authorized disclosures of their PII.

47.    Plaintiff's and Class Members' unencrypted, unredacted PII was compromised due to Defendant's negligent and/or careless acts and omissions, and due to the utter failure to protect Class Members' PII. Criminal hackers obtained their PII because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The heightened risks to Plaintiff and Class Members will remain for their respective lifetimes.

***FTC Guidelines Prohibit Defendant from Engaging in Unfair or Deceptive Acts or Practices.***

48.    Defendant is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

49.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[14]

50.     The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no longer needed, encrypt information stored on networks, understand their network's vulnerabilities, and implement policies to correct any security problems.[15]

51.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[16]

52.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

---

[14] *Start with Security – A Guide for Business*, United States Federal Trade Comm'n (2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[15] *Protecting Personal Information: A Guide for Business*, United States Federal Trade Comm'n,          https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personalinformation.pdf.

[16] *Id.*

53.    Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PII constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

***Cyberattacks and Data Breaches Cause Disruption and Put Consumers at an Increased Risk of Fraud and Identity Theft.***

54.    Cyberattacks and data breaches at companies like Defendant are especially problematic because they can negatively impact the overall daily lives of individuals affected by the attack.

55.    The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[17]

56.    That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal personally identifiable information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims, and to take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data

---

[17] *See* U.S. Gov. Accounting Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (2007), https://www.gao.gov/new.items/d07737.pdf.

thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

57.    Theft of PII is serious. The FTC warns consumers that identity thieves use PII to exhaust financial accounts, receive medical treatment, open new utility accounts, and incur charges and credit in a person's name.

58.    The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (and consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing freezes on their credit, and correcting their credit reports.[18]

59.    Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud. According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan, change a billing address so the victim no longer receives bills, open new utilities, obtain a mobile phone, open a bank account and write bad checks, use a debit card number to withdraw funds, obtain a new

---

[18] *See IdentityTheft.gov*, Federal Trade Commission, https://www.identitytheft.gov/Steps (last accessed Feb. 24, 2023).

driver's license or ID, and/or use the victim's information in the event of arrest or court action.

60.    Identity thieves can also use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, and/or rent a house or receive medical services in the victim's name.

61.    Moreover, theft of PII is also gravely serious because PII is an extremely valuable property right.[19]

62.    Each year, identity theft causes tens of billions of dollars of losses to victims in the United States. For example, with the PII stolen in the Data Breach, which includes Social Security numbers, identity thieves can open financial accounts, commit medical fraud, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft. These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class members.

63.    These risks are both certainly impending and substantial. As the FTC

---

[19] *See, e.g.*, John T. Soma, et al., *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets." (citations omitted)).

has reported, if hackers get access to PII, they *will use it.*[20]

64.    There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. Fraud and identity theft resulting from the Data Breach may go undetected until debt collection calls commence months, or even years later.

65.    For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, and it takes some individuals up to three years to learn that information.[21]

66.    Cybercriminals can post stolen PII on the cyber black market for years following a data breach, thereby making such information publicly available.

67.    Approximately 21% of victims do not realize their identity has been compromised until more than two years after it happened. [22] This gives thieves ample time to seek multiple treatments under the victim's name.

68.    Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.[23]

69.    It is within this context that Plaintiff must now live with the knowledge that her PII is forever in cyberspace and was taken by people willing to use the

---

[20] *Id.*

[21] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 JOURNAL OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019). http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

[22] *See* Medical ID Theft Checklist, https://www.identityforce.com/blog/medical-id-theft-checklist-2 (last visited Apr. 17, 2023).

[23] *Guide for Assisting Identity Theft Victims*, FED. TRADE COMM'N, 4 (Sept. 2013). http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

information for any number of improper purposes and scams, including making the information available for sale on the black market.

70.     Victims of the Data Breach, like Plaintiff, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their privacy and credit because of the Data Breach.[24]

71.     As a direct and proximate result of the Data Breach, Plaintiff has had her PII exposed, have suffered harm and have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft. Plaintiff must now take the time and effort (and spend the money) to mitigate the actual and potential impact of the Data Breach on her everyday life, including purchasing identity theft and credit monitoring services every year for the rest of her life, placing "freezes" and "alerts" with credit reporting agencies, contacting his financial institutions and healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

72.     Moreover, Plaintiff and Class members have an interest in ensuring that their PII, which remains in the possession of Defendant, is protected from further public disclosure by the implementation of better employee training and industry standard and statutorily compliant security measures and safeguards. Defendant has shown itself to be wholly incapable of protecting Plaintiff's PII.

73.     Plaintiff and Class members also have an interest in ensuring that their personal information that was provided to Defendant is removed from Defendant's unencrypted files.

_____

[24] *Id.*

74.    Because of the value of its collected and stored data, Defendant knew or should have known about these dangers and strengthened its data security accordingly. Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.

***Plaintiff Suffered Damages.***

75.    Defendant received Plaintiff and Class members' PII in connection with providing legal services to them. In requesting and maintaining Plaintiff's PII for business purposes, Defendant expressly and impliedly promised, and undertook a duty, to act reasonably in its handling of Plaintiff's and Class members' PII. Defendant did not, however, take proper care of Plaintiff and Class members' PII, leading to its exposure to and exfiltration by cybercriminals as a direct result of Defendant's inadequate security measures.

76.    For the reasons mentioned above, Defendant's conduct, which allowed the Data Breach to occur, caused Plaintiff and Class members significant injuries and harm in several ways. Plaintiff and Class members must immediately devote time, energy, and money to: (1) closely monitor their medical statements, bills, records, and credit and financial accounts; (2) change login and password information on any sensitive account even more frequently than they already do; (3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and (4) search for suitable identity theft protection and credit monitoring services, and pay to procure them. Plaintiff and Class members have taken or will be forced to take these measures in order to mitigate their potential damages as a result of the Data Breach.

77.    Once PII is exposed, there is little that can be done to ensure that the exposed information has been fully recovered or obtained against future misuse. For

this reason, Plaintiff and Class members will need to maintain these heightened measures for years, and possibly their entire lives because of Defendant's conduct.

78.    Further, the value of Plaintiff's and Class members' PII has been diminished by its exposure in the Data Breach. Plaintiff and Class members did not receive the full benefit of their bargain when paying for their purchases, and instead received services that were of a diminished value with Defendant. Plaintiff and Class members were damaged in an amount at least equal to the difference in the value between the items they thought they paid for (which would have included adequate data security protection) and the items and services they actually received.

79.    Plaintiff and Class members would not have obtained items from Defendant or paid the amount they did to receive such items, had they known that Defendant would negligently fail to protect their PII. Indeed, Plaintiff and Class members paid for items with the expectation that Defendant would keep their PII secure and inaccessible from unauthorized parties. Plaintiff and Class members would not have obtained items from Defendant had they known that Defendant failed to properly train its employees, lacked safety controls over its computer network, and did not have proper data security practices to safeguard their PII from criminal theft and misuse.

80.    As a result of Defendant's failures, Plaintiff and Class members are also at substantial and certainly impending increased risk of suffering identity theft and fraud or other misuse of their PII.

81.    Further, because Defendant delayed sending mail notice of the same to Plaintiff and Class members for nearly four months, Plaintiff and Class members were unable to take affirmative steps during that time period to attempt to mitigate any harm or take prophylactic steps to protect against injury.

CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL - 18

82.     From a recent study, 28% of consumers affected by a data breach become victims of identity fraud—this is a significant increase from a 2012 study that found only 9.5% of those affected by a breach would be subject to identity fraud. Without a data breach, the likelihood of identify fraud is only about 3%.[25]

83.     Plaintiff is also at a continued risk because their information remains in Defendant's computer systems, which have already been shown to be susceptible to compromise and attack and is subject to further attack so long as Defendant fails to undertake the necessary and appropriate security and training measures to protect its consumers' PII.

84.     In addition, Plaintiffs and Class members have suffered emotional distress as a result of the Data Breach, the increased risk of identity theft and financial fraud, and the unauthorized exposure of their private information to strangers.

## CLASS ALLEGATIONS

85.     Plaintiff brings all counts, as set forth below, individually and as a Class action, pursuant to the provisions of the Fed. R. Civ. P. 23, on behalf of a Class defined as:

> All persons in the United States who had their Private Information submitted to Defendant and/or whose Private Information was compromised as a result of the data breach(es) by Defendant, including all who received a Notice of the Data Breach (the "Class").

_____

[25] Stu Sjouwerman, *28 Percent of Data Breaches Lead to Fraud*, KNOWBE4. https://blog.knowbe4.com/bid/252486/28-percent-of-data-breaches-lead-to-fraud (last visited Feb. 29, 2024).

86.    Excluded from the Class are Defendant, its subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

87.    This proposed Class definition is based on the information available to Plaintiff at this time. Plaintiff may modify the Class definition in an amended pleading or when they move for Class certification, as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

88.    **Numerosity – Fed. R. Civ. P. 23(a)(1)**: Plaintiffs are informed and believe, and thereon allege, that there are at minimum, thousands of members of the Class described above. The exact size of the Class and the identities of the individual members are identifiable through Defendant's records, including but not limited to the files implicated in the Data Breach, but based on public information, the Class includes more than 316,350 individuals.

89.    **Commonality – Fed. R. Civ. P. 23(a)(2):** This action involves questions of law and fact common to the Class. Such common questions include, but are not limited to:

a.    Whether Defendant failed to timely notify Plaintiff of the Data Breach;

b.    Whether Defendant had a duty to protect the PII of Plaintiff and Class members;

c.    Whether Defendant was negligent in collecting and storing Plaintiff and Class members' PII, and breached its duties thereby;

d.    Whether Defendant breached its fiduciary duty to Plaintiff and the Class;

e.    Whether Defendant breached its duty of confidence to Plaintiff and the Class;

CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL - 20

f.    Whether Defendant violated its own Privacy Practices;

g.    Whether Defendant entered a contract implied in fact with Plaintiff and the Class;

h.    Whether Defendant breached that contract by failing to adequately safeguard Plaintiff and Class members' PII;

i.    Whether Defendant was unjustly enriched;

j.    Whether Plaintiff and Class members are entitled to damages as a result of Defendant's wrongful conduct; and

k.    Whether Plaintiff and Class members are entitled to restitution as a result of Defendant's wrongful conduct.

90.    **Typicality – Fed. R. Civ. P. 23(a)(3)**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct. Plaintiff and members of the Class all had information stored in Defendant's system, each having their PII exposed and/or accessed by an unauthorized third party.

91.    **Adequacy of Representation – Fed. R. Civ. P. 23(a)(3)**: Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex Class action litigation; Plaintiff intends to prosecute this action vigorously; and Plaintiff's counsel have adequate financial means to vigorously pursue this action and ensure the interests of the Class will not be harmed. Furthermore, the interests of the Class members will be fairly and adequately protected and represented by Plaintiff and Plaintiff's counsel.

92.    **Injunctive Relief, Fed. R. Civ. P. 23(b)(2)**: Defendant has acted and/or refused to act on grounds that apply generally to the Class therefore making

injunctive and/or declarative relief appropriate with respect to the Class under 23(b)(2).

93. **Superiority, Fed. R. Civ. P. 23(b)(3):** A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

94. Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

95. Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

     a. Whether Defendant failed to timely and adequately notify the public of the Data Breach;

     b. Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

     c. Whether Defendant's security measures to protect its data systems were reasonable in light of best practices recommended by data security experts;

d.  Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

e.  Whether Defendant failed to take commercially reasonable steps to safeguard consumer PII; and

f.  Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

96.  Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class members' names and addresses affected by the Data Breach. Defendant has already preliminarily identified Class members for the purpose of sending notice of the Data Breach.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

### (Plaintiff on behalf of the Class)

97.  Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

98.  Plaintiff brings this claim individually and on behalf of the Class.

99.  Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting their PII in its possession, custody, and control.

100.  Defendant's duty to use reasonable care arose from several sources, including but not limited to those described below.

101.  Defendant had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class members were the foreseeable and probable victims of any inadequate security practices on the part of the Defendant. By collecting and storing valuable PII that is routinely targeted by criminals for unauthorized access, Defendant was obligated to act with reasonable care to protect against these foreseeable threats.

CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL - 23

102.   Defendant's duty also arose from the fact that it holds itself out as a trusted provider of financial services, and thereby assumes a duty to reasonably protect consumers' information.

103.   Defendant breached the duties owed to Plaintiff and Class members and thus was negligent. As a result of a successful attack directed towards Defendant that compromised Plaintiff and Class members' PII, Defendant breached its duties through some combination of the following errors and omissions that allowed the data compromise to occur:

    a.    mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII;

    b.    mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks;

    c.    failing to design and implement information safeguards to control these risks;

    d.    failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures;

    e.    failing to evaluate and adjust its information security program in light of the circumstances alleged herein;

    f.    failing to detect the breach at the time it began or within a reasonable time thereafter;

    g.    failing to follow its own privacy policies and practices published to its consumers; and

CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL - 24

h.    failing to adequately train and supervise employees and third-party vendors with access or credentials to systems and databases containing sensitive PII.

104.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class members, their PII would not have been compromised.

105.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered injuries, including, but not limited to:

a.    Theft of their PII;

b.    Costs associated with the detection and prevention of identity theft and unauthorized use of their PII;

c.    Costs associated with purchasing credit monitoring and identity theft protection services;

d.    Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.    Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.    The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g.    Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that

Defendant would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others;

h.    Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class members' data; and

i.    Emotional distress from the unauthorized disclosure of PII to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class members.

106.   As a direct and proximate result of Defendant's negligence, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

## NEGLIGENCE PER SE

### (Plaintiff on behalf of the Class)

107.   Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

108.   Plaintiff brings this claim individually and on behalf of the Class.

109.   Section 5 of the FTC Act prohibits "unfair … practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by entities such as Defendant for failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Defendant's duty.

110.   Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with the industry standards.

CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL - 26

Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of a data breach involving PII of its consumers.

111.    Plaintiff and Class members are consumers within the Class of persons Section 5 of the FTC Act was intended to protect.

112.    Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

113.    The harm that has occurred as a result of Defendant's conduct is the type of harm that the FTC Act and Part 2 was intended to guard against.

114.    As a direct and proximate result of Defendant's negligence, Plaintiff has been injured as described herein, and is entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

**(Plaintiff on behalf of the Class)**

115.    Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

116.    Plaintiff and Class members have an interest, both equitable and legal, in the PII about them that was conveyed to, collected by, and maintained by Defendant and that was ultimately accessed or compromised in the Data Breach.

117.    As a provider of financial services and a recipient of consumers' PII, Defendant has a fiduciary relationship to its consumers, including Plaintiff and Class members.

118.    Because of that fiduciary relationship, Defendant was provided with and stored private and valuable PII related to Plaintiff and the Class. Plaintiff and

the Class were entitled to expect their information would remain confidential while in Defendant's possession.

119.   Defendant owed a fiduciary duty under common law to Plaintiff and Class members to exercise the utmost care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

120.   As a result of the parties' fiduciary relationship, Defendant had an obligation to maintain the confidentiality of the information within Plaintiff's and Class members' PII.

121.   Defendant's consumers, including Plaintiff and Class members, have a privacy interest in personal financial matters, and Defendant had a fiduciary duty not to such personal data of its consumers.

122.   As a result of the parties' relationship, Defendant had possession and knowledge of confidential PII of Plaintiff and Class members, information not generally known.

123.   Plaintiff and Class members did not consent to nor authorize Defendant to release or disclose their PII to unknown criminal actors.

124.   Defendant breached its fiduciary duties owed to Plaintiff and Class members by, among other things:

     a.    mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII;

     b.    mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks;

c.    failing to design and implement information safeguards to control these risks;

d.    failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures;

e.    failing to evaluate and adjust its information security program in light of the circumstances alleged herein;

f.    failing to detect the breach at the time it began or within a reasonable time thereafter;

g.    failing to follow its own privacy policies and practices published to its consumers; and

h.    failing to adequately train and supervise employees and third-party vendors with access or credentials to systems and databases containing sensitive PII.

125.    But for Defendant's wrongful breach of its fiduciary duties owed to Plaintiff and Class members, their PII would not have been compromised.

126.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered injuries, including:

a.    Theft of their PII;

b.    Costs associated with the detection and prevention of identity theft and unauthorized use of their PII;

c.    Costs associated with purchasing credit monitoring and identity theft protection services;

d.    Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.    Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal

with the actual and future consequences of the Data Breach — including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.    The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g.    Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's data against theft and not allow access and misuse of their data by others;

h.    Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's data; and

i.    Emotional distress from the unauthorized disclosure of PII to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff.

127.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL - 30

## FOURTH CAUSE OF ACTION
## BREACH OF CONFIDENCE
### (Plaintiff on behalf of the Class)

128.   Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

129.   Plaintiff and Class members have an interest, both equitable and legal, in the PII about them that was conveyed to, collected by, and maintained by Defendant and that was ultimately accessed or compromised in the Data Breach.

130.   As a provider of financial services and a recipient of consumers' PII, Defendant has a fiduciary relationship to its consumers, including Plaintiff and Class members.

131.   Plaintiff provided Defendant with their personal and confidential PII under both the express and/or implied agreement of Defendant to limit the use and disclosure of such PII.

132.   Defendant owed a duty to Plaintiff to exercise the utmost care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in its possession from being compromised, lost, stolen, accessed by, misused by, or disclosed to unauthorized persons.

133.   As a result of the parties' relationship, Defendant had possession and knowledge of confidential PII of Plaintiff.

134.   Plaintiff's PII is not generally known to the public and is confidential by nature.

135.   Plaintiff did not consent to nor authorize Defendant to release or disclose their PII to an unknown criminal actor.

136.   Defendant breached the duties of confidence it owed to Plaintiff when Plaintiff's PII was disclosed to unknown criminal hackers.

137.    Defendant breached its duties of confidence by failing to safeguard Plaintiff's and Class members' PII, including by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its on privacy policies and practices published to its consumers; (h) storing PII in an unencrypted and vulnerable manner, allowing its disclosure to hackers; and (i) making an unauthorized and unjustified disclosure and release of Plaintiff's PII to a criminal third party.

138.    But for Defendant's wrongful breach of its duty of confidences owed to Plaintiff, his privacy, confidences, and PII would not have been compromised.

139.    As a direct and proximate result of Defendant's breach of Plaintiff's confidences, Plaintiff and Class members have suffered injuries, including:

    a.    Theft of their PII;

    b.    Costs associated with the detection and prevention of identity theft and unauthorized use of their PII;

    c.    Costs associated with purchasing credit monitoring and identity theft protection services;

    d.    Lowered credit scores resulting from credit inquiries following fraudulent activities;

CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL - 32

e. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the KYL Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g. Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class members data against theft and not allow access and misuse of their data by others;

h. Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class members data; and

i. Loss of personal time spent carefully reviewing statements from health insurers and providers to check for charges for services not received, as directed to do by Defendant.

140. Additionally, Defendant received payments from Plaintiff for services with the understanding that Defendant would uphold its responsibilities to maintain the confidences of Plaintiff's and Class members' PII.

141. Defendant breached the confidence of Plaintiff when it made an unauthorized release and disclosure of their PII and, accordingly, it would be

inequitable for Defendant to retain the benefit at Plaintiff's and Class members' expense.

142.    As a direct and proximate result of Defendant's breach of its duty of confidences, Plaintiff and the Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**

**INTRUSION UPON SECLUSION/INVASION OF PRIVACY**

**(Plaintiff on behalf of the Class)**

143.    Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

144.    Plaintiff had a reasonable expectation of privacy in the PII Defendant mishandled.

145.    Defendant's conduct as alleged above intruded upon Plaintiff and Class members' seclusion under common law.

146.    By intentionally failing to keep Plaintiffs' PII safe, and by intentionally misusing and/or disclosing said information to unauthorized parties for unauthorized use, Defendant intentionally invaded Plaintiff and Class members' privacy by:

    a.    Intentionally and substantially intruding into Plaintiff and Class members' private affairs in a manner that identifies Plaintiff and Class members and that would be highly offensive and objectionable to an ordinary person;

    b.    Intentionally publicizing private facts about Plaintiff and Class members, which is highly offensive and objectionable to an ordinary person; and

CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL - 34

c.      Intentionally causing anguish or suffering to Plaintiff and Class members.

147.  Defendant knew that an ordinary person in Plaintiff or Class members' position would consider Defendant's intentional actions highly offensive and objectionable.

148.  Defendant invaded Plaintiff and Class members' right to privacy and intruded into Plaintiff's and Class members' private affairs by intentionally misusing and/or disclosing their PII without their informed, voluntary, affirmative, and clear consent.

149.  Defendant intentionally concealed from and delayed reporting to Plaintiff and Class members a security incident that misused and/or disclosed their PII without their informed, voluntary, affirmative, and clear consent.

150.  The conduct described above was directed at Plaintiff and Class members.

151.  As a proximate result of such intentional misuse and disclosures, Plaintiff's and Class members' reasonable expectations of privacy in their PII was unduly frustrated and thwarted. Defendant's conduct amounted to a substantial and serious invasion of Plaintiff's and Class members' protected privacy interests causing anguish and suffering such that an ordinary person would consider Defendant's intentional actions or inaction highly offensive and objectionable.

152.  In failing to protect Plaintiff's and Class members' PII, and in intentionally misusing and/or disclosing their PII, Defendant acted with intentional malice and oppression and in conscious disregard of Plaintiff and Class members' rights to have such information kept confidential and private. Plaintiff, therefore, seeks an award of damages on behalf himself and the Class.

153.   As a direct and proximate result of Defendant's conduct, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED CONTRACT
### (Plaintiff on behalf of the Class)

154.   Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

155.   Plaintiff brings this claim individually and on behalf of the Class.

156.   When Plaintiff and Class members provided their PII to Defendant in exchange for goods and services, they entered into implied contracts with Defendant, under which Defendant agreed to take reasonable steps to protect Plaintiff's and Class members' PII, comply with statutory and common law duties to protect their PII, and to timely notify them in the event of a data breach.

157.   Defendant solicited and invited Plaintiff and Class members to provide their PII as part of Defendant's provision of goods and services. Plaintiff and Class members accepted Defendant's offers and provided their PII to Defendant.

158.   When entering into implied contracts, Plaintiff and Class members reasonably believed and expected that Defendant's data security practices complied with its statutory and common law duties to adequately protect Plaintiff's and Class members PII and to timely notify them in the event of a data breach.

159.   Defendant's implied promise to safeguard consumers' PII is evidenced by, *e.g.*, the representations in Defendant's Notice of Privacy Practices set forth above.

160.   Plaintiff and Class members paid money to Defendant in order to receive services. Plaintiff and Class members reasonably believed and expected that

Defendant would use part of those funds to obtain adequate data security. Defendant failed to do so.

161.  Plaintiff and Class members would not have provided their PII to Defendant had they known that Defendant would not safeguard their PII, as promised, or provide timely notice of a data breach.

162.  Plaintiff and Class members fully performed their obligations under their implied contracts with Defendant.

163.  Defendant breached its implied contracts with Plaintiff and Class members by failing to safeguard Plaintiff's and Class members' PII and by failing to provide them with timely and accurate notice of the Data Breach.

164.  The losses and damages Plaintiff and Class members sustained include, but are not limited to:

    a.    Theft of their PII;

    b.    Costs associated with purchasing credit monitoring and identity theft protection services;

    c.    Costs associated with the detection and prevention of identity theft and unauthorized use of their PII;

    d.    Lowered credit scores resulting from credit inquiries following fraudulent activities;

    e.    Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and

imposing withdrawal and purchase limits on compromised accounts;

f.    The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g.    Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others;

h.    Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class members' data; and

i.    Emotional distress from the unauthorized disclosure of PII to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class members.

165.   As a direct and proximate result of Defendant's breach of contract, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

### SEVENTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### (Plaintiff on behalf of the Class)

166.    Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

167.    Plaintiff brings this claim individually and on behalf of the Class in the alternative to Plaintiff's' implied contract claim.

168.    Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments made by or on behalf of Plaintiff and Class members.

169.    As such, a portion of the payments made by or on behalf of Plaintiffs and Class members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

170.    Plaintiff and Class members conferred a monetary benefit on Defendant. Specifically, they purchased services from Defendant and in so doing provided Defendant with their PII. In exchange, Plaintiff and Class members should have received from Defendant the services that were the subject of the transaction and have their PII protected with adequate data security.

171.    Defendant knew that Plaintiff and Class members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII of Plaintiff and Class members for business purposes.

172.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class members' PII. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profits at the expense

of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security.

173.   Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class members, because Defendant failed to implement appropriate data management and security measures that are mandated by its common law and statutory duties.

174.   Defendant failed to secure Plaintiff's and Class members' PII and, therefore, did not provide full compensation for the benefit Plaintiff and Class members provided.

175.   Defendant acquired the PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

176.   If Plaintiff and Class members knew that Defendant had not reasonably secured their PII, they would not have agreed to provide their PII to Defendant.

177.   Plaintiff and Class members have no adequate remedy at law.

178.   As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have suffered injuries, including, but not limited to:

      a.    Theft of their PII;

      b.    Costs associated with purchasing credit monitoring and identity theft protection services;

      c.    Costs associated with the detection and prevention of identity theft and unauthorized use of their PII;

      d.    Lowered credit scores resulting from credit inquiries following fraudulent activities;

      e.    Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate,

and deal with the actual and future consequences of the Data
Breach – including finding fraudulent charges, cancelling and
reissuing cards, enrolling in credit monitoring and identity theft
protection services, freezing and unfreezing accounts, and
imposing withdrawal and purchase limits on compromised
accounts;

f.     The imminent and certainly impending injury flowing from the
increased risk of potential fraud and identity theft posed by their
PII being placed in the hands of criminals;

g.     Damages to and diminution in value of their PII entrusted,
directly or indirectly, to Defendant with the mutual
understanding that Defendant would safeguard Plaintiff's and
Class members' data against theft and not allow access and
misuse of their data by others;

h.     Continued risk of exposure to hackers and thieves of their PII,
which remains in Defendant's possession and is subject to further
breaches so long as Defendant fails to undertake appropriate and
adequate measures to protect Plaintiff's and Class members'
data; and

i.     Emotional distress from the unauthorized disclosure of PII to
strangers who likely have nefarious intentions and now have
prime opportunities to commit identity theft, fraud, and other
types of attacks on Plaintiff and Class members.

179.   As a direct and proximate result of Defendant's conduct, Plaintiff and
Class members have suffered and will continue to suffer other forms of injury and/or
harm.

180.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiffs and Class members overpaid for Defendant's goods and services.

### EIGHTH CAUSE OF ACTION
### DECLARATORY JUDGMENT
### (Plaintiff on behalf of the Class)

181.    Plaintiff restates and realleges the preceding allegations the paragraphs above as if fully alleged herein.

182.    Plaintiff brings this claim individually and on behalf of the Class.

183.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and granting further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal statutes described in this Complaint.

184.    An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and other duties to reasonably safeguard Plaintiff's and Class members' PII, and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class members from future data breaches that compromise their PII. Plaintiff and the Class remain at imminent risk of further compromises of their PII will occur in the future.

185.    The Court should also issue prospective injunctive relief requiring Defendant to employ adequate security practices consistent with law and industry standards to protect consumers' PII.

186.    Defendant still possesses the PII of Plaintiff and the Class.

187.   To Plaintiffs' knowledge, Defendant has made no announcement or notification that it has remedied the vulnerabilities and negligent data security practices that led to the Data Breach.

188.   If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial.

189.   The hardship to Plaintiff and Class members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if another data breach occurs at Defendant, Plaintiff and Class members will likely continue to be subjected to a heightened, substantial, imminent risk of fraud, identify theft, and other harms described herein. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

190.   Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and Class members, along with other consumers whose PII would be further compromised.

191.   Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Defendant implement and maintain reasonable security measures, including but not limited to the following:

      a.      Engaging third-party security auditors/penetration testers, as well as internal security personnel, to conduct testing that includes simulated attacks, penetration tests, and audits on Defendant's

systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b.    Engaging third-party security auditors and internal personnel to run automated security monitoring;

c.    Auditing, testing, and training its security personnel regarding any new or modified procedures;

d.    Purging, deleting, and destroying PII not necessary for its provisions of services in a reasonably secure manner;

e.    Conducting regular database scans and security checks; and

f.    Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, pray for relief as follows:

a.    For an Order certifying this action as a Class action and appointing Plaintiff as a Class Representatives and their counsel as Class Counsel;

b.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff and Class members' PII, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class members;

CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL - 44

c.      For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Personal Information compromised during the Data Breach;

d.      For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

e.      Ordering Defendant to pay for not less than three years of credit monitoring services for Plaintiff and the Class;

f.      For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g.      For an award of punitive damages, as allowable by law;

h.      For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i.      Pre- and post-judgment interest on any amounts awarded; and,

j.      Such other and further relief as this court may deem just and proper.

### JURY TRIAL DEMANDED

A jury trial is demanded by Plaintiff on all claims so triable.

Dated this 10th day of December, 2024.

                                    _/s/Daniel Srourian_
                                    Daniel Srourian, Esq. [SBN 285678]
                                    **SROURIAN LAW FIRM, P.C.**
                                    468 N. Camden Dr. Suite 200
                                    Beverly Hills, CA 90210
                                    Telephone: (213) 474-3800
                                    Fax: (213) 471-4160
                                    Email: daniel@slfla.com

CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL - 45